## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTIAN OATES, | ) |
| | ) |
| Plaintiff, | )      CASE NO. |
| | ) |
| v. | ) |
| | ) |
| ELAINE CHAO, SECRETARY OF | ) |
| TRANSPORTATION, | ) |
| | )      JANUARY 7, 2021 |
| Defendant. | ) |

### COMPLAINT AND DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b), the Plaintiff hereby makes demand for a trial by jury with regard to the statutory claims set forth below and for a jury determination of all damages reserved by said statutes for the jury.

### NATURE OF CLAIMS

1.      This action is brought to remedy discrimination on the basis of disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. and its incorporation of the provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.  It is the Plaintiff's contention that he was caused to suffer damages due to disparate treatment on the basis of his disability, upon the Defendant regarding him as disabled

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

and/or based upon a retaliatory intent in response to the Plaintiff's requests for help, assistance and/or accommodation.  The Plaintiff further contends that he was harmed by the disparate impact upon persons with disabilities attendant to policies and procedures implemented by the Defendant.

  2. The Plaintiff seeks monetary relief including, but not limited to: back pay, front pay, compensatory damages, punitive damages, emotional distress (non-economic), attorneys' fees and the costs of this action, and any and all other appropriate legal and equitable relief pursuant to applicable federal law.

**JURISDICTION AND VENUE**

  3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. and its incorporation of the provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

  4. This District Court is an appropriate venue pursuant to 28 U.S.C. § 1391(e) as this is a civil action against an officer, employee and/or agency of the United States and there is no real property involved in this action.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

## EXHAUSTION OF REMEDIES

5.     The Plaintiff filed a timely claim with the United States Department of Transportation and with the Equal Employment Opportunities Commission (EEOC).

6.     The Plaintiff's complaint with the United States Department of Transportation was assigned No. DOT-2018-28025-FAA-01 and his EEOC complaint was assigned No. 520-2020-00072X.

7.     The Plaintiff received a corrected final order dated November 13, 2020 and was instructed that he had up to ninety (90) days from receipt of the order to file a claim in an appropriate United States District Court.

8.     The Plaintiff has commenced this action within ninety (90) days of receipt of the corrected final order.

## PARTIES

9.     The Plaintiff, Christian Oates, is a fifty-two (52) year old male with a recognized disability, Attention Deficit Disorder (ADD).  He is a resident of the State of Connecticut.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

10.     The Defendant, Elaine Chao, is the Secretary of the United States Department of Transportation (DOT), a federal administrative agency having an address at 1200 New Jersey Avenue, SE Washington, D.C.

## FACTS

11.     The Plaintiff was hired by the Federal Aviation Administration (FAA) as an Airway Transportation System Specialist (ATSS), at WEP47-BOS SSC ("Boston Logan") on August 21, 2017.  The Plaintiff was set to become a permanent employee on August 20, 2018.

12.     Prior to his start date, the Plaintiff underwent an extensive intake process with the FAA's human resources department.

13.     From childhood, the Plaintiff has struggled with a learning disability such that he, after failing first grade, required special education and a more structured learning environment.

14.     The Plaintiff's disability altered the manner in which he learned; however, with counseling, Mr. Oates developed methods for learning very complex subjects and has enjoyed tremendous success in board certified and accredited academic institutions

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

where the environment is conducive to learning, promoting knowledge and where personal development is valued.

15.    Upon his hire, the Plaintiff was notified that the FAA had recently changed its policies and procedures with respect to new employees.  In the past, the FAA would send new hires straight to the FAA Academy in Oklahoma City, Oklahoma, for training so that when assigned to a regional support center, the candidate had aptitude and skills to perform.

16.    In the Plaintiff's case, he was immediately placed at Boston Logan without prior training.

17.    The Plaintiff's Boston Logan first level supervisor, Valario Castro, demonstrated frustration and annoyance with Mr. Oates based upon his lack of training and skills from the start.  The work environment was very stressful, hostile and adversarial mostly due to Mr. Castro's disdain for an untrained ATSS, and his inability to manage the new process the FAA had implemented.

18.    Mr. Castro further refused to help, train or develop the Plaintiff, but rather issued instructions in a condescending manner, gave forceful, aggressive orders, and

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

routinely refused to hear the Plaintiff's concerns, especially with regard to his difficulty with written FAA training materials.

19.     Within a few weeks onsite at Boston Logan, the Plaintiff was sent away for training in Common Principals (CP) at the FAA Academy in Oklahoma City.  CP was a mandatory introductory course for ATSS candidates.

20.     Upon the Plaintiff's return from Common Principles, Mr. Castro discussed the training modules that the Plaintiff completed in Oklahoma City.  During this discussion, Mr. Castro made note of the fact that the Plaintiff struggled with Module 4 – Troubleshooting.  The Plaintiff indicated to him that he suffered from a learning disability and that he needed additional time for learning new materials.  When given time, Mr. Oates expressed, he could learn and retain the required information.

21.     As a follow-up to the Onboarding Process described in paragraph 12, the Plaintiff contacted his human resources representative, Ericka Williams, after returning from the FAA Common Principles Course.  The Plaintiff described the difficult events he had witnessed in Oklahoma City and at Boston Logan with the hope of investigating options for other potential job opportunities at alternate FAA service centers.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

22.     During the course of the Plaintiff's discussion with Ms. Williams, and in response to a question from her, the Plaintiff indicated that he had struggled with a disability.  The Plaintiff indicated that he had Attention Deficit Disorder (ADD).  At this early juncture, the Plaintiff had made clear his disability and need for accommodation of the same.

23.     After the first phase of training in Oklahoma City, the Plaintiff was set to undergo further training in May 2018 upon enrollment in the ETVS (Voice Switch) systems course.

24.     The availability of courses at the FAA Academy is variable and there was an unforeseen delay in enrolling the Plaintiff in ETVS.  The lack of availability was not the fault of the Plaintiff.

25.     Mr. Castro expressed frustration with the Plaintiff's pace of advancement through certifications and classes despite the fact that availability was variable.

26.     The Plaintiff's delay in obtaining certifications was further due to Mr. Castro's failure to provide support, guidance and accommodation for the Plaintiff's disability.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

27.     Mr. Castro and others failed to provide an agency required training plan to the Plaintiff.  Furthermore, Mr. Castro failed to provide many basic job necessities, such as Personal Protective Equipment (PPE) and runway safety apparel.

28.     Knowing of the Plaintiff's disability, the utter lack of organization and/or structure further exacerbated his condition and created an environment suggestive of a desire to push the disabled employee toward failure.

29.     The Plaintiff's second level supervisor at Boston Logan was David Ashley.

30.     Mr. Castro had the responsibility of day-to-day supervision over the Plaintiff's performance.

31.     Mr. Ashley met the Plaintiff on only one occasion prior to his termination and never observed any aspect of the Plaintiff's performance at Boston Logan.

32.     Mr. Ashley took no responsibility or interest in the Plaintiff's pursuit of permanent hire status.

33.     Mr. Castro had ongoing discussions with Mr. Ashley about the Plaintiff and outside of the Plaintiff's presence.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

34.     Separate and apart from direct communications between the Plaintiff and Mr. Castro about the Plaintiff's disability, it is clear that both Mr. Ashley and Mr. Castro regarded the Plaintiff as having a mental health and/or intellectual disability.

35.     Mr. Castro indicated that Mr. Oates "has shown the need for a significant amount of additional time beyond the course length to absorb the information and translate the equipment theory to practical applications."

36.     At the close of the Plaintiff's first day of employment, Mr. Castro felt he made a mistake and began to take notes on the Plaintiff.  Mr. Castro had only taken notes on one other employee during his sixteen (16) years as a supervisor, and never before started taking such notes on the first day of employment.

37.     In preparation for the ETVS course in May-June 2018 and with knowledge of the potential difficulty, the Plaintiff had requested of Mr. Castro learning and reading materials to better equip him for the testing.

38.     In making this request, the Plaintiff again expressed concerns about his learning disability and the fact that reading and preparing ahead of time would be extremely helpful.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

39.     Mr. Castro simply ignored the requests and dismissed his requests as bothersome, many times scolding the Plaintiff, "you need to stop and listen to me," with a tone and facial expression which made obvious Mr. Castro's annoyance at these overtures.

40.     Mr. Castro's attitude conveyed a message that a non-disabled person should have no problem with the test and learning assignments, and in turn, a disabled person is not important enough to accommodate.

41.     At the ETVS course in May-June 2018, all the other students were shocked that this would be the Plaintiff's first systems course, with minimal other certifications obtained.  It was noteworthy that candidates from other FAA service centers had a far more organized training plan than that of the Plaintiff.

42.     Without preparation, guidance, organization or care from his supervisors prior to departure, the ETVS course caused the Plaintiff tremendous difficulty.

43.     The ETVS instructor, Michael Durham, spent a majority of the class time engaged in off-topic, personal discussions having nothing to do with the subject matter of the course.  Mr. Durham's discussions, in large part, involved descriptions of his personal life, hobbies, conquests and adventures, sometimes presented in an offensive

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

and/or insensitive manner.  While this approach may have been tolerable for colleagues with prior experience and/or technical proficiencies, Mr. Durham's teaching style was utterly distracting and made it difficult for the Plaintiff to learn.

44.     When the Plaintiff asked for more particular instruction and guidance, he was mocked incessantly with Mr. Durham repeating the refrain "some people just don't get it, they are slow," and/or words/phrases to that effect.

45.     The first time Mr. Durham used one of these pejorative phrases, the Plaintiff responded by stating that he in fact did suffer from a learning disability and that he required a more structured learning environment.

46.     Mr. Durham's approach was in every way scattered, loud, dismissive, hurried, disorganized, insulting and of particular concern, distracting.

47.     Mr. Durham's incessant condescending remarks about the Plaintiff being "slow" would blend in with his bullied, hurried, scattered instruction and constant departures to talk about his personal life.

48.     On one particular occasion, facing an amalgam of utterances in rapid-fire fashion as described above, the Plaintiff suffered a nervous breakdown in front of his instructors.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

49.     Mr. Durham sensed that the Plaintiff was having difficulty noting that he was struggling and taking longer to complete tasks than others in the class.

50.     The Plaintiff confronted Mr. Durham on two separate occasions for approximately one (1) minute each time about the difficulty he was having with focus against the backdrop of off-topic discussions distracting from course instruction.

51.     Mr. Durham held the belief that the Plaintiff was a "tool" based upon his experience with the Plaintiff and the Plaintiff's opposition to his continuous discussion of personal matters during class time.

52.     In response to these discussions, Mr. Durham asked his supervisor, Anthony Murray, to speak with the Plaintiff about the conflict between the two individuals.

53.     Mr. Murray met with the Plaintiff to discuss his issues with the course and the instructor.  Mr. Murray expressed understanding about the fact that this was the Plaintiff's first systems class and that this was compounded by the fact that he suffered from a learning disability.

54.     Mr. Durham ceased his practice of talking about personal topics during class time after the Plaintiff's complaint.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4116    JURIS NO. 62114

55.     Mr. Murray contacted Mr. Ashley by telephone to report the issues between the Plaintiff and Mr. Durham.

56.     Other than his discussions with the Plaintiff and Mr. Durham, Mr. Murray did not observe any of the classroom interactions between the two individuals.

57.     Mr. Ashley and Mr. Castro requested a written report from the supervisors at Oklahoma City with regard to the interactions between the Plaintiff and Mr. Durham.

58.     The Academy sent a report with regard to the ETVS class wherein it concluded that there was a personality conflict between the Plaintiff and Mr. Durham and that "all issues and concerns were resolved and no additional issues have arisen."

59.     Despite the written report's description of a rather ordinary interaction, Mr. Ashley, not having been present for the ETVS class and not having spoken to any witnesses, characterized the Plaintiff as causing a "scene" and causing further embarrassment to Boston Logan.  Mr. Ashley indicated "we did not need this kind of individual out representing Boston [Logan]."

60.     Mr. Castro, not having been present for the ETVS class, and not having spoken to any witnesses, characterized the Plaintiff as engaging in an "outburst" at the course.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

61.     The depictions of Mr. Ashley and Mr. Castro with regard to the Plaintiff's behavior at the class were patently inaccurate and in conflict with the written report from the supervisors in Oklahoma City.

62.     By submitting their own subjective characterization of the Plaintiff suggesting that he acted in a belligerent manner, it is clear that both Mr. Ashley and Mr. Castro regarded the Plaintiff as suffering from a mental health disability.

63.     An accurate portrayal of the Plaintiff's conduct in Oklahoma City did not match Mr. Ashley's and Mr. Castro's beliefs about the Plaintiff and regarding him as disabled.

64.     On June 15, 2018, Mr. Durham announced that a modification of the class schedule placed the final ETVS exam two (2) days earlier than originally anticipated.

65.     To the Plaintiff, who was struggling with the material as presented, losing two (2) additional days of study was critical.  He was in a panic as a result of the announcement.

66.     When the Plaintiff approached Mr. Durham about his panic, Mr. Durham ignored him.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

67.     The Plaintiff struggled with the final exam and did not reach the required score.  Had the Plaintiff been provided appropriate accommodation, he would have passed every aspect of the exam.

68.     The Plaintiff, after much difficulty, did pass the ETVS course and was prepared for further training in his position.

69.      After the ETVS course, the Plaintiff returned to Boston Logan and his supervisor, Mr. Castro.  In the spirit of communicating "lessons learned" to his supervisor, the Plaintiff expressed his difficulty with the ETVS course and the erratic teaching.  He described his nervous breakdown, the rapid-fire, incoherent, confusing instruction and his regret for not having material to review ahead of the systems course.

70.     The Plaintiff then, for a third time, expressed to Mr. Castro that his intellectual disability severely impacted his performance during the recent ETVS class.

71.     Mr. Castro made condescending and dismissive remarks with regard to the Plaintiff's disability, laughing it off with a comparison of the Plaintiff's disability to his own "OCD [obsessive compulsive disorder] issues with his wife leaving stuff around the house."

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

72.    Mr. Castro offered no advice or guidance as to the Plaintiff's issue with Mr. Durham's instruction.

73.    As of June 27, 2018, the Plaintiff was scheduled for additional training on site at Boston Logan.

74.    Shortly after this third discussion of the Plaintiff's disability with Mr. Castro, the FAA terminated the Plaintiff's employment citing as its reason Mr. Oates having failed to "demonstrate fitness for the position...[and] failure to conduct [himself] in a professional, businesslike manner in the workplace..."  This language is code for the difficulties associated with employing an individual with intellectual disabilities and/or regarding the Plaintiff as unsatisfactory due to his disability.

75.    Mr. Ashley made the decision to terminate the Plaintiff's employment.

76.    Mr. Ashley's primary basis for terminating the Plaintiff's employment was his [Mr. Ashley's] characterization of the incident occurring during the ETVS course in Oklahoma City.

77.    Mr. Ashley indicated, with regard to the ETVS course, that the Plaintiff acted "unprofessionally in an adversarial manner, challenging course procedures resulting in disruptions that had a direct, negative impact on the classroom environment

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

for instructors and others students alike.  These continued physical and verbal displays of frustration with FAA training materials...indicate to me that you are not well-suited for the position you now hold..."

78.     Mr. Ashley's letter contains material misrepresentations as contrasted with the written report from Academy supervisors.

79.     Mr. Ashley's letter is merely reflective of a subjective regard for the Plaintiff as a disabled person suffering from mental health related issues.

80.     The Defendant's reason for termination is clearly pretextual as it is not based upon the facts ascertained from Boston Logan's investigation of the ETVS class events.

**FIRST COUNT**: VIOLATION OF 29 U.S.C. § 701 et. seq. (Wrongful/Discriminatory Discharge on the basis of disability)

1-80.  Paragraphs 1-80 of this Complaint are realleged and incorporated herein as paragraphs 1-80 of this First Count.

81.     The Plaintiff has a qualifying mental health and/or intellectual disability and the Defendant was aware of such disability.

82.     The Plaintiff was qualified for the position of ATSS as he had the intelligence and capability of performing the essential functions of the job.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

83.     The Plaintiff passed all of the courses in which he was enrolled.

84.     The Plaintiff was not subject to formal discipline or counseling during this employment.

85.     The Defendant did not use as a basis for the termination decision the Plaintiff's matriculation through the ATSS training.

86.     The Defendant's purported reason for termination of the Plaintiff's employment was related to events surrounding his attendance at the ETVS course in Oklahoma City.

87.     The Defendant's purported reason for discharge is pretextual in that:

    a.     Mr. Ashley misrepresented the facts revealed through the investigation of the Plaintiff's issues with Mr. Durham;

    b.     Mr. Ashely relied upon his own characterization of what occurred rather than those who observed the class firsthand;

    c.     It was premised upon behaviors rather than aptitude;

    d.     Mr. Ashley, the primary decision-maker, never once observed the Plaintiff's performance at Boston Logan;

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

e.      Despite not having ever observed the Plaintiff, Mr. Ashley averred that he personally observed performance deficiencies; and

f.      The Academy report of the ETVS course indicated that the Plaintiff and Mr. Durham effectively resolved any outstanding issues.

88.     The Defendant's decision was motivated by the Plaintiff's disability as follows:

a.      The Defendant refused to provide help, assistance, guidance and/or encouragement when the Plaintiff raised issues with learning;

b.      The Defendant refused the Plaintiff's request for reading materials and additional training supplements;

c.      The Defendant was dismissive and condescending toward the Plaintiff when he made requests for help;

d.      The Defendant directly insulted the Plaintiff, considering him a "tool," and by making comments about his struggles in Oklahoma City and his attempts to conquer the course materials;

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

e.     Despite recognizing that the Plaintiff was struggling with course material and taking a longer period of time to master the material, the Defendant cast him aside in favor of providing attention to other, non-disabled employees;

f.     The Defendant engaged in supervisory tactics as to the Plaintiff which were rarely, if ever, utilized such as taking daily, hour-to-hour notes on the Plaintiff and issuing memoranda in support of termination; and

g.     The Defendant arranged for law enforcement to be present on the day that the Defendant was terminated.

89.     The Defendant used the Plaintiff's disability as a negative factor in relation to advancement, job training, terms, conditions and privileges of employment with the FAA.

90.     The Defendant discriminated against the Plaintiff on the basis of his disability in terminating him from employment in violation of 29 U.S.C. § 701 et seq.

91.     As a result of these statutory violations, the Plaintiff has been caused to suffer: loss of pay and benefits, front pay, attorneys' fees, emotional distress damages, punitive damages, pain and suffering, related costs, loss of opportunity and interest.

**SECOND COUNT**: VIOLATION OF 29 U.S.C. § 701 et. seq. (Wrongful/Discriminatory Discharge on the basis of regarding the Plaintiff as disabled)

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320     TEL. (860) 442-4416     JURIS NO. 62114

1-80.   Paragraphs 1-80 of this Complaint are realleged and incorporated herein as paragraphs 1-80 of this First Count.

81.   The Defendant regarded the Plaintiff as a person suffering from a mental health and/or intellectual disability.

82-87. Paragraphs 82-87 of the First Count are hereby realleged and incorporated herein as paragraphs 82-87 of this Second Count.

88.   The Defendant's decision was motivated by its regard for and/or conception of the Plaintiff as suffering from a mental health and/or intellectual disability.

89.   The Defendant's supervisors, representatives and decision-makers demonstrated a pattern of recognizing the Plaintiff as disabled as follows:

   a.   From the first day of his employment, after briefly meeting the Plaintiff, Mr. Castro expressed regret for his hiring decision;

   b.   From the first day of hire, Mr. Castro began to take regular notes on the Plaintiff, a tactic he had never utilized at such an early phase of a subordinate's employment;

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

c.      Mr. Castro held the belief that the Plaintiff demonstrated "the need for a significant amount of additional time beyond the course length to absorb the information and translate equipment theory to practical applications";

d.      Upon information and belief, Mr. Castro described the Plaintiff to Mr. Ashley in an unflattering manner despite the Plaintiff's satisfactory performance;

e.      Mr. Durham found it "pretty obvious" that the Plaintiff was struggling and that he took several hours longer than fellow students to complete certain modules;

f.      Mr. Durham referred to the Plaintiff out loud and in an insulting manner as "slow," "not getting it" and that tasks took more time for him;

g.      Mr. Durham conceded that he thought of the Plaintiff as a "tool";

h.      The manufactured narrative of the ETVS incident included provocative references to the Plaintiff as creating a "scene" and/or engaging in "outbursts" when in fact the matter had been amicably resolved;

i.      The Defendant conceded that the Plaintiff had the skill and aptitude to perform the functions of his position;

j.      The Defendant identified a behavioral issue as the trigger for terminating the Plaintiff's employment; and

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

k.      The Defendant identified the Plaintiff as lacking fitness for employment.

90.     The Defendant discriminated against the Plaintiff by regarding him as disabled and terminating his employment on that basis in violation of of 29 U.S.C. § 701 et seq.

91.     As a result of these statutory violations, the Plaintiff has been caused to suffer: loss of pay and benefits, front pay, attorneys' fees, emotional distress damages, punitive damages, pain and suffering, related costs, loss of opportunity and interest.

**THIRD COUNT**: VIOLATION OF 29 U.S.C. § 701 et. seq. (Wrongful discharge in retaliation for seeking accommodation of his disability)

1-87.   Paragraphs 1-87 of the First Count are hereby realleged and incorporated herein as paragraphs 1-87 of this Third Count.

88.     The Defendant's decision was motivated by retaliation toward the Plaintiff's requests for assistance as follows:

a.      The Defendant refused to provide help, assistance, guidance and/or encouragement when the Plaintiff raised issues with learning;

b.      The Defendant refused the Plaintiff's request for reading materials and additional training supplements;

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

c.      The Defendant was dismissive and condescending toward the Plaintiff when he made requests for help;

d.      The Defendant directly insulted the Plaintiff, considering him a "tool," and by making comments about his struggles in Oklahoma City and his attempts to conquer the course materials;

e.      Despite recognizing that the Plaintiff was struggling with course material and taking a longer period of time to master the material, the Defendant cast him aside in favor of providing attention to other, non-disabled employees;

f.      The Defendant engaged in supervisory tactics as to the Plaintiff which were rarely, if ever, utilized such as taking daily, hour-to-hour notes on the Plaintiff and issuing memoranda in support of termination; and

g.      The Defendant arranged for law enforcement to be present on the day that the Defendant was terminated.

89.     The Defendant retaliated against the Plaintiff by terminating his employment on the basis of his requests for help, assistance and/or accommodation in violation of 29 U.S.C. § 701 et seq.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

90.     As a result of these statutory violations, the Plaintiff has been caused to suffer: loss of pay and benefits, front pay, attorneys' fees, emotional distress damages, punitive damages, pain and suffering, related costs, loss of opportunity and interest.

**FOURTH COUNT**: VIOLATION OF 29 U.S.C. § 701 et. seq. (Wrongful discharge as a result of disparate impact)

1-90.   Paragraphs 1-90 of the Third Count are hereby realleged and incorporated herein as paragraphs 1-90 of this Fourth Count.

91.     While Mr. Oates had the aptitude, skill and intelligence to perform the duties of his position, he needed only a modicum of encouragement, support and assistance.

92.     The Defendant, through its conduct leading up to termination, inadequacy of preparation, training and organization, lack of genuine concern and care, failure to recognize the significance and impact of FAA policy changes on new hires, and systemic failures in these areas contributed to the termination of the Plaintiff's employment.

93.     The Defendant further violated the Rehabilitation Act by utilizing standards, criteria and/or methods of administration which had the effect of discriminating against individuals with learning disabilities and/or attention deficit

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

disorders.  More particularly, individuals like the Plaintiff with ADD and accompanying learning deficits would be patently disadvantaged by disorganized structure, teaching, processes, lack of resources and learning materials.  The Defendant's training/teaching model causes failure on the part of those with intellectual disabilities and did so in the present case.

94.    The Defendant further violated the Rehabilitation Act by perpetuating discrimination against those with learning disabilities by imposing administrative control in such a manner as to lead to chaos, disorganization and confusion.  The Plaintiff, in particular, fell victim to these administrative policies and procedures.

95.    The Defendant further violated the Rehabilitation Act by using qualification standards, employment tests or other selection criteria that screened out or tended to screen out an individual with an attention deficit disorder and/or a learning disability.

96.    The Defendant's policies and procedures with regard to new hires had a disparate impact on the Plaintiff due to his disability and led to his discharge.

97.    As a result of these statutory violations, the Plaintiff has been caused to suffer: loss of pay and benefits, front pay, attorneys' fees, emotional distress damages, punitive damages, pain and suffering, related costs, loss of opportunity and interest.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

**WHEREFORE**, the Plaintiff prays for relief as follows:

1.   Lost wages and benefits;

2.   Future wages and benefits;

3.   Non-economic damages (i.e., emotional distress);

4.   Punitive Damages;

5.   Attorneys' Fees and Costs;

6.   Interest; and

7.   Such other relief as the Court deems equitable.

THE PLAINTIFF

BY:_____/s_____
Bryan P. Fiengo
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200, P.O. Box 1591
New London, CT 06320
Phone: (860)-442-4416
Facsimile: (860)-442-0495
Juris No.: 62115
bfiengo@sswbgg.com

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114



**Department of
Transportation**

Office of the Secretary
Of Transportation

Departmental Office of
Civil Rights

Compliance Branch
1200 New Jersey Avenue, S.E., W76-401
Washington, DC 20590

**CORRECTED COPY**

**VIA EMAIL ONLY (Read and Delivery Receipt Requested)**

November 13, 2020

Christian Oates
c/o Brian Fiengo, Esq.
Suisman Shapiro Attorneys at Law
2 Union Plaza, P.O. Box 1591
New London, CT 06320

Ref:    *Oates v. FAA*
        DOT Complaint No. DOT-2018-28025-FAA-01
        EEOC No. 520-2020-00072X

Dear Mr. Oates:

We are transmitting this Final Order (FO) in your complaint of discrimination filed against
the Department of Transportation, Federal Aviation Administration (FAA).

At your request, your complaint was sent to the Equal Employment Opportunity Commission
(EEOC) for a hearing before an Administrative Judge (AJ). That process has been completed
and the AJ issued a decision entering summary judgment in favor of the Agency and finding
no discrimination. The complaint was returned to the Agency for the entry of this FO. We
have reviewed and analyzed the entire record in the complaint, and are accepting and fully
implementing the AJ's decision.

*We note that the AJ's Decision and/or Order is void of any specific instruction to the Agency
on holding this FO in abeyance pursuant to guidance provided by the EEOC in its April 6th,
2020 COVID-19 Guidance Memo (Memo) regarding case processing during the COVID-19
national emergency. More information on the Memo can be found at*
https://www.eeoc.gov/processing-information-all-parties-federal-eeo-processing-under-29-
cfr-part-1614

If you are dissatisfied with this FO, you have the following appeal rights:

> Within 30-calendar days of your receipt of this final decision, you have the right to
> appeal this decision to the:
>
> > **Director, Office of Federal Operations**
> > **Equal Employment Opportunity Commission**
> > **P.O. Box 77960**
> > **Washington, DC 20013**
> > ofo.eeoc@eeoc.gov

(EEOC Form 573, Notice of Appeal/Petition, enclosed for this purpose.)

Within 90-calendar days of your receipt of this action, you may file a civil suit in an appropriate U.S. District Court. The Court, at your request, may appoint and authorize legal counsel in circumstances that it deems just without the payment of fees, costs, or security. The granting or denial of the request is within the sole discretion of the Court.

You must name the person who is the official agency head or department head and his or her official title as the defendant in your appeal. In your case, you must name the following official as the defendant:

> **The Honorable Elaine L. Chao**
> **Secretary of Transportation**
> **1200 New Jersey Avenue, S.E.**
> **Washington, DC 20590**

Failure to provide the name or official title of the agency head or department head may result in dismissal of your cases.

Please be advised that at the time you file any appeal or civil action, you must furnish a copy of the appeal documents to the following officials[1]:

> **Associate Director**
> **Equal Employment Opportunity Complaints**
> **  and Investigations Division**
> **Departmental Office of Civil Rights**
> **Department of Transportation**
> **1200 New Jersey Avenue, S.E., W76-401**
> **Washington, DC 20590**
> **Phone: (202) 366-9370**
> **E-mail:** DOCR-EEOC-HearingandAppealCorrespondence@dot.gov

> **Lisa A. Holden**
> **Federal Aviation Administration**
> **Office of the Chief Counsel**
> **600 Independence Ave., SW, Ste 1E100**
> **Washington DC 20591**
> **Phone 202-267-0270**
> **E-mail:** 9-AWA-10AEEOC@faa.gov

Sincerely,

*Patricia L. Sterling*

Patricia L. Sterling, Acting Chief
Compliance Branch
Equal Employment Opportunity Complaints
  and Investigations Division

_____

3

2 Enclosures: 1) EEOC Decision and Order Granting Agency's Motion for Summary Judgement,
dated September 10, 2020
2) EEOC Form 573

cc:   ASO-9
w/ Enclosures

Christian Oates
Via email: coates41@gmail.com

**Complainant's Legal Representative**
Brian Fiengo, Esq.,
Via email: bfiengo@sswbgg.com
w/ Enclosures

Philip Edwards, Esq., AGC-100
w/o Enclosures

Neile F. Eisner
Administrative Judge
U.S. Equal Employment Opportunity Commission
Boston Area Office
John F. Kennedy Federal Building, Room 475
Government Center
Boston, MA 02203
w/o Enclosures
Via email: Neile.eisner@eeoc.gov

---

[1] Due to the mail delays and limited federal building access during the national emergency, all notices and
correspondence concerning your EEO complaint should be sent via electronic mail until further notice. We
ask that you or your representative notify DOCR if your work or personal email address(es) change at any
time during the processing of your EEO complaint. Please send notification of email address changes to
patricia.fields@dot.gov.